MEADOW LAKE FARMS, INC. *v.* Carl COOPER,
and Ben Cooper, d/b/a Cooper Farms

04-367                                          200 S.W.3d 399

Supreme Court of Arkansas
Opinion delivered December 16, 2004

*Timothy F. Watson, Sr.*, for appellant.

*Tom Thompson*, for appellee.

ROBERT L. BROWN, Justice. Appellant Meadow Lake Farms, Inc., appeals from the circuit court's judgment granting summary judgment to appellees Carl Cooper and Ben Cooper, d/b/a Cooper Farms, where the court found that Meadow Lake Farms was not a licensed contractor. Meadow Lake Farms argues on appeal that the circuit court erred in granting summary judgment to the Coopers, because Meadow Lake Farms is not a "contractor" as defined by Ark. Code Ann. § 17-25-101(a)(1) (Repl. 2001), and the Arkansas Contractor Licensing statutes should not be construed to apply to agricultural precision land leveling. We agree with Meadow Lake Farms that summary judgment was granted in error, and we reverse and remand for further proceedings.

The facts are these. Meadow Lake Farms is a farming corporation with its principal place of business in Jackson County. The corporation owns farm land totaling 5,000 acres in Jackson and Independence Counties and is privately owned by Lewis Jones and his son, Mike Jones. The Coopers reside in Izard County and own a farm in Jackson County. The Coopers' Jackson County farm is close to one of the farms run by Meadow Lake Farms.

Meadow Lake Farms is primarily engaged in planting, cultivating, and hand harvesting rice, soybeans, and other crops, according to the affidavit of Lewis Jones. It also provides agricultural precision land leveling, primarily for its own farm land but also for the benefit of land they rent from others. On occasion, Meadow Lake Farms will level farm land for neighboring farms when it is asked to perform that service.

In 1999, Rick Fuller, a tenant of Cooper Farms, asked Lewis Jones to level one of the Coopers' agricultural fields. Jones and his son did so as part of the Meadow Lake Farms operation. Ben Cooper paid Meadow Lake Farms $25,590.51 for this work on February 25, 2000. Later in 2000, Fuller again approached Lewis Jones about leveling another one of the Coopers' agricultural fields. After Meadow Lake Farms did so, Ben Cooper paid Meadow Lake Farms $27,865.50 for this work on August 3, 2000. In October 2000, Fuller came to Jones again about leveling a third agricultural field belonging to the Coopers. After performing this job, on November 16, 2000, Meadow Lake Farms sent the Coopers an invoice for these services and for an ARKLA bill, all of which totaled $23,649.89. The Coopers did not pay this invoice.

Meadow Lake Farms sued the Coopers for payment of its invoice. The Coopers filed their answer and asserted that Meadow Lake Farms could not collect, because it was not a licensed contractor. The Coopers then moved for summary judgment and claimed that Meadow Lake Farms was a contractor under Ark. Code Ann. § 17-25-101(a)(1) and was operating without a contractor's license, as required by Ark. Code Ann. § 17-25-103 (Repl. 2001). Hence, they asserted that Meadow Lake Farms was precluded from bringing this action. A hearing was held on the motion, after which the court entered summary judgment in favor of the Coopers.

Meadow Lake Farms contends on appeal that the circuit court's judgment should be reversed, because the circuit court erred in finding that Meadow Lake Farms was a "contractor" that needed a contractor's license to provide agricultural precision land leveling services. It claims that it is not a "contractor" under a strict reading of Ark. Code Ann. § 17-25-101(a)(1), because the Coopers' land is not "for lease, rent, resale, public access or similar purpose," as required by the statute. It further maintains that like the landscaper in *Wilcox v. Safley*, 298 Ark. 159, 766 S.W.2d 12 (1989), it merely made the Coopers' farm land usable for farming. Moreover, according to Meadow Lake Farms, the General Assembly intends to distinguish services to agricultural lands from general commercial construction, because it once did so in Ark. Code Ann. § 17-25-106 (Repl. 2001) (construction for grain bins exempt from contractor's license requirement), even though this statute was repealed by Act 1346, § 1 of 2003. Finally, it urges that the circuit court erred in not giving due deference to the affidavit of Gregory L. Crow, attorney for the Arkansas Contractor Licens-

ing Board, who averred that § 17-25-101 had never been applied to agricultural land leveling by the Board. Meadow Lake Farms also notes that other states have exempted farms from contractor licensing provisions.

We turn first to a discussion of our standard of review. Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See* Ark. R. Civ. P. 56(c). *See also Swaim v. Stephens Production Co.*, 359 Ark. 190, 196 S.W.3d 5 (2004). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Swaim v. Stephens Production Co., supra.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

We review issues of statutory interpretation *de novo*, because it is for this court to decide what a statute means. *See, e.g., Swaim v. Stephens Production Co., supra; Cooper Realty Investments, Inc. v. Arkansas Contractors Licensing Bd.*, 355 Ark. 156, 134 S.W.3d 1 (2003). While we are not bound by the circuit court's ruling, we will accept that court's interpretation of a statute unless it is shown that the court erred. *See id.* When dealing with a penal statute, this court strictly construes the statute in favor of the party sought to be penalized. *See Cooper Realty Investments, Inc. v. Arkansas Contractors Licensing Board, supra; Ports Petroleum Co., Inc. of Ohio v. Tucker*, 323 Ark. 680, 916 S.W.2d 749 (1996).

The statute at issue defines a "contractor" as:

> ...any ...corporation, ...who, for a fixed price, ...contracts or undertakes to construct, ...or manages the ...alteration, ...or has ...altered, ...under ...its direction, any ...grading, or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, ...when the cost of the work to be done, or done, in the State of Arkansas by the contractor, ...is twenty thousand dollars ($20,000) or more.

Ark. Code Ann. § 17-25-101(a)(1) (Repl. 2001). Under Arkansas law, any "contractor" violating the licensure law shall be guilty of a misdemeanor and shall be liable for a fine of not less than $100 nor more than $200 for each offense, with each day to constitute a separate offense. *See* Ark. Code Ann. § 17-25-103(a)(1) (Repl. 2001). Arkansas law further provides that no action may be brought, either at law or equity, to enforce any provision of a contract entered into in violation of this chapter. *See* Ark. Code Ann. § 17-25-103(d) (Repl. 2001). No action, moreover, may be brought either at law or equity for *quantum meruit* by any contractor in violation of this chapter. *See id.*

The Rules and Regulations of the Contractors Licensing and Bond Law provide that a contractor may be licensed in the following categories: heavy construction; highway, railroad, and airport construction; municipal and utility construction; building; light building; mechanical; electrical; and a specialty category. *See* Rules and Regulations 224-25-5(a). There are specialty classifications within each category. For example, within the heavy construction category, there exist a "dams, dikes, levees, and canals" specialty classification; within the building category, there exist "erosion control," "grading and drainage," and "landscaping, irrigation, streams" specialty classifications; and within the specialty category, there exists "dams, dikes, levees, canals," "erosion control," "grading and drainage," and "landscaping, irrigation, streams" specialty classifications. *See* Rules and Regulations, Outline of Classifications (1), (4), & (8).

The Coopers initially advance the argument that the issue of whether the improvement must be done "on public or private property for lease, rent, resale, public access, or similar purpose," as the definition for "contractor" under § 17-25-101(a)(1) requires, is not preserved because that specific assertion was not made to the circuit court. We disagree.

■ The question of whether Meadow Lake Farms was a "contractor" under § 17-25-101(a)(1) based on its field leveling work was the sole issue before the circuit court. Meadow Lake Farms contended it was not a contractor. The circuit court quoted the full statute in its order and obviously considered the statute *in toto*. The court said in its order:

A.C.A. Section 17-25-101(a)(1) provides, in part:

"As used in this chapter, unless the context otherwise requires, "contractor" means any . . . corporation . . . who, for a fixed price

. . . attempts to or submits a bid to construct, or contracts or undertakes to construct, or assumes charge, in a supervisory capacity or otherwise, or manages the construction, erection, alteration, or repair, or has or have constructed, erected, altered or repaired, under his or her, their, or its direction, any building, apartment, condominium, highway, sewer, utility, *grading, or any other improvement or structure on public or private property for a lease, rent, resale, public access, or similar purpose,* except single family residences, when the cost to be done, or done in the state of Arkansas by the contractor, including, but not limited to, labor and materials is Twenty Thousand Dollars ($20,000.000) or more." (Emphasis added).

It is now this court's task to interpret the meaning of the statute on *de novo* review. For us not to consider the entire statute would unduly hamper our interpretation and skew the results. This we will not do. As an additional point, this court has in the past adduced statutory authority that is apposite to the point raised on appeal, even when the precise subsection of the statute was not cited by the appellant. *See Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998).

The circuit court, in its summary judgment, focused on the "grading" language in § 17-25-101(a)(1) and the Rules and Regulations of the Contractors Licensing and Bond Law but failed to consider *where* the grading was to take place. That of course, is the essence of this litigation. Meadow Lake Farms maintains that a "contractor" under § 17-25-101(a)(1) must be involved in some construction enterprise regarding structures and not simply engaged in field leveling for crops, where no structure is contemplated. That argument necessarily brings into play what work is being performed but also where the service is being provided, that is, on what property. To be a contractor, the work must pertain to property "for lease, rent, resale, public access, or similar purpose."

Meadow Lake Farms likens its situation to the fact situation in *Wilcox v. Safley, supra.* In *Wilcox*, a construction company was awarded a contract as the prime contractor to construct a sewer system in Faulkner County. The prime contractor orally agreed with a landscaper to pay him $2.32 per square yard of sod, if he provided bermuda sod and placed it on areas disturbed in the construction of the sewer system. When the prime contractor refused to pay the landscaper the balance due, the landscaper filed suit. The circuit court found that the landscaper providing the sod was a contractor who was not licensed and that that precluded him from maintaining an action to recover the balance due.

On appeal, this court reversed. We held that the language of Ark. Code Ann. § 17-22-101(a) (Supp. 1987), which is now codified at § 17-25-101(a)(1) (Repl. 2001), is not clear and unambiguous and is reasonably open to different interpretations, particularly when examining the actions of the landscaper. *Id.* This court then strictly construed § 17-22-101 (Supp. 1987) and § 17-22-103 (Supp. 1987), which is now codified at § 17-25-103 (Repl. 2001), in favor of the landscaper and found that he was not a contractor for purposes of § 17-22-101(a). Thus, he was entitled to maintain an action to recover his losses. *Id.* We said:

> Code provisions imposing penalties for noncompliance with licensing requirements, such as §§ 17-22-101 and 17-22-103, must be strictly construed. Accordingly, if the language of such provisions is not clear and positive, or if it is reasonably open to different interpretations, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied. Where a provision is clear and unambiguous, the intention of the legislature must be determined from the plain meaning of the language of the provision.
>
> The language of § 17-22-101(a) is not clear and unambiguous. Under § 17-22-101(a), a contractor is a person who attempts to or submits a bid to construct, contracts or undertakes to construct, or manages the construction, erection, alteration, or repair of a building, apartment, condominium, highway, sewer, utility, grading, or any other improvement. In narrowly construing this language, we conclude that it is reasonably open to different interpretations, particularly when we examine the actions of [the landscaper] in sodding, sprigging, and seeding the land in question. These activities do not fall within the definition of construction, erection, alteration, or repair.

*Wilcox v. Safley*, 298 Ark. at 161-62, 766 S.W.2d at 13 (internal citations omitted).

We agree with Meadow Lake Farms that the facts of the case at hand are analogous to those found in *Wilcox v. Safley, supra*. Clearly, this court held in that case that the predecessor statute to § 17-25-101(a)(1) (Repl. 2001), was open to reasonably different interpretations. Similarly, reasonably different interpretations were advanced at the trial level in this case. The circuit court found that Meadow Lake Farms's activities were "grading," and, thus, fell within the purview of the statute, whereas Meadow

Lake Farms claimed that its activities were not "grading" in the sense of grading for "construction" but rather were for the purpose of leveling farm lands for crop production. As we said in *Wilcox v. Safley, supra*, if the language is not clear and positive or is reasonably open to different interpretations, every doubt as to statutory construction must be resolved in favor of the one against whom the enactment is sought to be applied. In this case, that party is Meadow Lake Farms.

We are mindful of the standard of review for summary judgment, but also for when a penal statute is involved. In this case, we must strictly construe the penal statute in favor of Meadow Lake Farms. *See Cooper Realty Investments, Inc. v. Arkansas Contractors Licensing Bd., supra*. This court determined in *Wilcox v. Safley, supra*, that the language of § 17-25-101(a)(1) was not clear and unambiguous. We conclude that there exists a genuine factual issue surrounding whether Meadow Lake Farms provided grading services on property "for lease, rent, resale, public access, or similar purpose." We reverse the summary judgment and remand for a decision on that issue.

Reversed and remanded.

THORNTON, J., not participating.