2012 Ark. App. 142

**J & J EXCAVATING, Appellant**

v.

**DOYNE CONSTRUCTION COMPANY, INC., and Liberty Mutual Insurance Company, Appellees.**

**No. CA 11–264.**

Court of Appeals of Arkansas.

Feb. 15, 2012.

Chris H. Stewart, Little Rock, for appellant.

David Allen Grace, North Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

On November 17, 2010, the Pulaski County Circuit Court granted summary judgment to appellees Doyne Construction Company (Doyne) and Liberty Mutual Insurance Company, citing Arkansas Code Annotated section 17–25–103 (Repl.2010) as barring any action against them from appellant J & J Excavating. On appeal, appellant argues that the statute is unconstitutional and that summary judgment was improper. We affirm.

## I. Statement of Facts

On April 25, 2006, appellant, a father-and-son excavating company, contracted with appellee Doyne, a commercial construction company, to perform the following work in connection with a construction project described as "LRFD Fire Training Facility at Little Rock, Arkansas" for a total price of $107,000:

> Provide labor, material, equipment, insurance, and taxes required to perform the site demolition, area cut and fill work required in accordance with the plans and specifications dated January 18, 2006, Addendum Number 1 dated February 8, 2006 and Addendum Number 2 dated February 14, 2006 and in accordance with your proposal dated February 21, 2006 and Exhibit "A", "B" and "C" reference attached.

On October 30, 2006, appellant contracted with appellee Doyne to perform the following work in connection with a construction project described as "Arkansas Children's Hospital—General Pediatric Clinic II" for a total price of $192,500:

> Provide labor, material, equipment, insurance, and taxes required to perform the site demo and excavation including tree removal/stump grinding, erosion control, storm drain, foundation drain, roof drain, prep and backfill at curb/gutter, sawcutting asphalt and concrete for excavation work, temporary construction entrances and tracking pad(s) in accordance with the project plans, specifications, and all addendums.

Appellee Liberty Mutual Insurance Company executed and delivered payment bonds in connection with each of these projects. Appellant did not have a valid Arkansas contractor's license at the time it entered into these contracts and claims that appellee Doyne was aware of the fact and expressly authorized appellant to work under its contractor's license and bonds. A dispute arose between the parties concerning appellant's performance of its contract(s) and its entitlement to payment of the contract proceeds. On July 9, 2007, appellant filed a complaint against appellees to collect the disputed proceeds. Appellees denied liability on factual grounds and asserted Arkansas Code Annotated section 17–25–103(d) as a legal bar to the enforcement of the contracts. On March 27, 2009, appellees moved for summary judgment on the sole ground that appellant's cause of action was barred by the statute because appellant did not have a valid Arkansas contractor's license when it entered into the contracts described in the complaint. In response, appellant asserted that it was not a contractor, as defined in the Arkansas contractor's licensing laws, and that issues of material fact had to be developed in discovery before the motion for summary judgment was ripe for adjudication.

Appellant was permitted to conduct its discovery and eventually argued that the motion for summary judgment should be denied because issues of material fact—

whether appellee Doyne knew that appellant did not have a contractor's license and whether appellee Doyne allowed appellant to perform its work using Doyne's contractor's license—prevented the entry of judgment as a matter of law. Appellant did not challenge the constitutionality of Arkansas Code Annotated section 17–25–103(d) in the trial court.

On November 17, 2010, the trial court entered a judgment and order granting the motion for summary judgment. Appellant filed a timely notice of appeal, and this appeal followed.

## II. *Applicable Law*

Arkansas Code Annotated section 17–25–103(a)(1)(A) generally provides that a contractor may not enter into a contract for construction when the cost of the work to be done, including labor and materials, is $20,000 or more, without first having procured a license with the proper classification to engage in the business of contracting. Subsection (d) provides that no action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of the statute. Further, no action may be brought either at law or in equity for quantum meruit by any contractor in violation of the statute. Ark.Code Ann. § 17–25–103(d).

## III. *Constitutionality*

■ Appellant first argues that subsection (d) of section 17–25–103 is unconstitutional as written. Appellant points to the Constitution of the State of Arkansas, which states, "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall ever be passed; and no conviction shall work corruption of blood or forfeiture of estate." Ark. Const. art. 2, § 17. Appellant maintains that inherent in the freedoms afforded to citizens of this State is the ability to contract freely.

Further, a crucial part of that freedom to contract with individuals and the State is the ability of citizens to enforce the terms and conditions of those contracts in the event of a breach. Appellant claims that Arkansas Code Annotated section 17–25–103(d) impairs the obligations of contracts and should, therefore, be deemed unconstitutional. *See Leach v. Smith,* 25 Ark. 246 (1868) (where the Arkansas Supreme Court held that the Confederate Money Act of 1867 was unconstitutional because it impaired the obligation of contracts).

There is no record of appellant's argument regarding unconstitutionality of the statute presented in the trial court. The Arkansas Supreme Court has repeatedly held that the failure to obtain a ruling, even with respect to a constitutional question, precludes the issue on appeal. *State Farm Fire & Cas. Co. v. Ledbetter,* 355 Ark. 28, 129 S.W.3d 815 (2003); *Technical Servs. of Ark., Inc. v. Pledger,* 320 Ark. 333, 896 S.W.2d 433 (1995). In this case, the trial court's order did not include a ruling on the constitutionality of Arkansas Code Annotated section 17–25–103(d). Because there was no ruling below, this court is procedurally barred from addressing the issue on appeal.

## IV. *Summary Judgment*

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Gonzales v. City of DeWitt,* 357 Ark. 10, 159 S.W.3d 298 (2004). On appellate review, we must determine whether summary judgment was proper based on whether the evidence presented by the moving party left a material fact unanswered. *Windsong Enters., Inc. v. Upton,* 366 Ark. 23, 233 S.W.3d 145 (2006). This court views the evidence in the light most

favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Cole v. Laws,* 349 Ark. 177, 76 S.W.3d 878, *cert. denied,* 537 U.S. 1003, 123 S.Ct. 509, 154 L.Ed.2d 400 (2002). Where there are no disputed material facts, our review must focus on the trial court's application of the law to those undisputed facts. *Parker v. S. Farm Bureau Cas. Ins. Co.,* 104 Ark. App. 301, 292 S.W.3d 311 (2009).

■ Appellant argues that summary judgment was improper. First, appellant claims that it is not a contractor and is not required to have a contractor's license. Arkansas Code Annotated section 17–25–101(a)(1) (Repl.2010) defines a contractor as

> any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, that, for a fixed price, commission, fee, or wage, attempts to or submits a bid to construct or demolish, or contracts or undertakes to construct or demolish, or assumes charge, in a supervisory capacity or otherwise, or manages the construction, erection, alteration, demolition, or repair, or has or have constructed, erected, altered, demolished, or repaired, under his or her, their, or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, except single-family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more.

Appellant cites *Wilcox v. Safley,* 298 Ark. 159, 766 S.W.2d 12 (1989), where our supreme court held that a person hired to lay sod was not a contractor required to be licensed in order to maintain an action for sums due pursuant to Arkansas Code Annotated section 17–22–01 (Supp.1987) (now 17–25–101). Appellant argues that, likewise, it is not a contractor. Appellant claims that dirt moving is not listed in the definition of "contractor" under the statute. Ark.Code Ann. § 17–25–101(a). Therefore, appellant claims that a contractor's license was unnecessary.

Appellant also claims that appellee Doyne agreed to allow appellant to operate under the umbrella of Doyne's general contractor's license. Appellant submitted affidavits supporting this contention and argues that this evidence created material facts in controversy. Further, appellant contends that it was not a contractor, but rather an employee of appellee Doyne, reporting to supervisors and agents of appellee Doyne. Thus, appellant maintains that, viewed in a light most favorable to it, summary judgment was not proper in this case.

Appellees claim that appellant is a contractor as defined under the statute. Appellees point to appellant's agreement to perform the "site demolition, area cut and fill work" in the LRFD training facility project, as well as appellant's agreement to perform "site demo and excavation," "storm drain, foundation drain, roof drain, prep and backfill at curb/gutter," and "temporary construction entrances and tracking pad(s)," at the Arkansas Children's Hospital project. Appellees cite the statute's definition of contractor, which includes those engaged in "demolition," "utility," and "grading." Ark.Code Ann. § 17–25–101(a)(1). Further, appellees rely on *Meyer v. CDI Contractors, LLC,* 102 Ark. App. 290, 284 S.W.3d 530 (2008), where Arkansas Code Annotated section 17–25–103(d) applied to an unlicensed contractor performing "earth work" of the type described in the parties' contracts.

We agree with appellees' assertion that appellant falls under the definition of "contractor" as set forth in Arkansas Code Annotated section 17–25–101(a)(1), thus making section 17–25–103(d) applicable. The work described in the contracts at issue—demolition, fill work, cut work, excavation—is encompassed by at least one of the categories of the statute listed as construction, erection, alteration, demolition, or repair. This fact distinguishes the instant case from *Wilcox, supra*, where, in narrowly construing the language, our supreme court concluded that sodding, sprigging, and seeding the land in question do not fall within the definition of construction, erection, alteration, or repair.

Affirmed.

VAUGHT, C.J., and WYNNE, ABRAMSON, and HOOFMAN, JJ., agree.

HART, J., concurs in part; dissents in part.

JOSEPHINE LINKER HART, Judge, concurring in part; dissenting in part.

I agree that J & J Excavating's challenge to the constitutionality of Arkansas Code Annotated section 17–25–103(d) is not preserved for appellate review, so I concur with that portion of the majority opinion. I, however, cannot agree that the majority has correctly interpreted that statute.

It is settled law that code provisions imposing penalties for noncompliance with licensing requirements must be strictly construed. *Wilcox v. Safley*, 298 Ark. 159, 766 S.W.2d 12 (1989). If the language of such provisions is not clear and positive, *or if it is reasonably open to different interpretations*, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied. *Id.* In my view that standard was not applied.

The definition of a contractor is set out in Arkansas Code Annotated section 17–25–101(a)(1):

(a)(1) As used in this chapter, "contractor" means any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, that, for a fixed price, commission, fee, or wage, attempts to or submits a bid to construct or demolish, or contracts or undertakes to construct or demolish, or assumes charge, in a supervisory capacity or otherwise, or manages the construction, erection, alteration, demolition, or repair, or has or have constructed, erected, altered, demolished, or repaired, under his or her, their, or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, except single-family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more.

Clearly J & J was not constructing or demolishing any improvement. It was, at best, doing dirt work under direct supervision of a general contractor in preparation for an improvement. That is not enough.

In *Wilcox v. Safley, supra*, a case clearly analogous to the case at bar, the supreme court held that a man who was doing restorative sodding to complete a sewer project was not a contractor under the statute and therefore could maintain an action to collect money owed to him from the general contractor. The *Wilcox* court held that sodding and sprigging was not "construction, erection, alteration, or repair." The dissent in *Wilcox* asserted that what Wilcox was doing was a "repair" or

"grading." That activity was insufficient to qualify Wilcox as a contractor because he did not assume "charge, in a supervisory capacity or otherwise, or manage" or direct the activity.

The holding in *Wilcox* requires us to reverse and remand this case. Like the appellant in *Wilcox*, J & J had only a small piece of the projects for which Doyne was the general contractor. The fact that J & J was doing preparatory site work instead of the finish work at issue in *Wilcox* is a distinction without a difference. Dirt work is not construction or demolition of an "improvement"; it is merely a step in a process that was managed by a general contractor. Accordingly, agreeing in a writing to perform "site demolition" did not make J & J a contractor. Obviously, the "site" was not an improvement; it was only the location of an improvement that was yet to be constructed.

Further, for an entity to be considered a contractor with regard to the more extensive list of actions in the statute, i.e., "erection, alteration, demolition, or repair," section 17–25–101(a) requires that the entity "assumes charge, in a supervisory capacity or otherwise, or manages" the project. I cannot ignore that Doyne Construction conceded at oral argument that J & J had no supervisory responsibility in the projects whatsoever.

Finally, it is worth noting that the majority, like the trial court and the dissent in *Wilcox*, made the same mistake in construing the statute. "Grading" is not the activity that is contemplated by the statute; rather it is the type of "improvement" that the activity in question must be directed toward. "Grading" under the statute is a gerund, not a verb. The grading, as in creating a road has to be the "improvement." It is error hold that the mere act of pushing dirt around makes J & J a contractor under the statute. *Id.*; see *Meadow Lake Farms, Inc. v. Cooper*, 360 Ark. 164, 200 S.W.3d 399 (2004).

Finally, because J & J's participation in the projects could be reasonably characterized in different ways, *Wilcox* requires that the courts resolve the ambiguity in favor of the party against whom the punitive sanctions of section 17–25–103(d) are sought to be applied. It is not defendable to do otherwise.